LAIRD v. WITTKOWSKI et al.

(Supreme Court, Appellate Division, First Department. January 10, 1902.)

1. MORTGAGES—DUTY OF MORTGAGEE—SALE OF MORTGAGED P.. . .RTY—ASSUMPTION OF MORTGAGE DEBT—SUBROGATION.

A mortgagor and his grantee, on an assumption of the mortgage debt by the grantee, are placed in the relation of principal and surety, to such an extent that the mortgagee, on notice of the relation, cannot do any act which will prejudice the rights of the mortgagor, or defeat his right of being subrogated to the mortgagee on his payment of the mortgage debt, though the mortgagee may proceed in the first instance against the mortgagor to collect such debt.

2. SAME—SALE OF MORTGAGED PREMISES—DEFICIENCY—LIABILITY OF MORTGAGOR.

The owner of real estate gave a mortgage thereon to secure a bond, and then sold the premises; the purchaser agreeing to assume the mortgage debt. The purchaser died, and the mortgaged premises were sold in a partition suit before the maturity of the mortgage debt; the mortgagee consenting that it should be sold free from the mortgage, and to accept the proceeds in lieu of his claim on the property, but not in satisfaction of the debt evidenced by the bond. The mortgagor did not consent thereto. The mortgagee purchased the property for less than the mortgage debt. Held, that the action of the mortgagee in releasing the land from the mortgage, and in precipitating the maturity of the debt, would relieve the mortgagor from any liability on the bond for the deficiency.

3. SAME—ACTION ON A BOND—EVIDENCE—ADMISSIBILITY.

The mortgagor in an action on the bond may show the value of the mortgaged property at the time it was purchased by the mortgagee, even though the transaction be construed as a sale of collateral security by a creditor, which only operates to discharge the secured debt to the value of the security so sold.

Appeal from trial term, New York county.

Action by John Laird against Henry Wittkowski and another, on a bond secured by a mortgage, to recover a deficiency remaining after the sale of the mortgaged property. From a judgment in favor of the plaintiff, and an order denying a new trial, the defendants appeal. Reversed.

The action was brought to recover upon a bond accompanying a purchase-money mortgage for $2,000. The plaintiff sold the premises to the defendant

on April 1, 1897, for $21,500, subject to a mortgage of $15,000; taking back, as part of the purchase price, the $2,000 bond and mortgage referred to, payable April 1, 1900. On December 21, 1897, the defendants sold the property to George Wallace Bryant for $19,000, subject to the payment of the first mortgage, of $15,000, and the plaintiff's second mortgage, of $2,000, both of which Bryant assumed and agreed to pay; and the amount thereof was deducted from the consideration or purchase money. After this sale of the property by the defendants, the plaintiff was informed of the sale, and that Bryant had assumed the payment of the mortgages, and subsequently plaintiff's agent collected from him the interest on the $2,000 mortgage. About the 27th of July, 1898, while still the owner of the premises, Bryant died intestate, and a partition suit was commenced in June, 1899, by one of his heirs against his widow and remaining heirs and next of kin. In that suit the plaintiff, Laird, was made a party defendant, but neither of these defendants was a party thereto. Whether they knew of the pendency of the partition action until after the sale does not appear from this record, but it is stated in their briefs that they did not. The plaintiff's counsel, on the other hand, in his brief, says that when the property was sold at public sale, the defendants had due notice thereof. As the record is silent, however, we cannot conclude either way on this point. The referee in the partition action found that the value of the premises here involved was $18,000, and the mortgages $17,000, leaving, according to this computation, an equity of $1,000; and upon the referee's report, an order for interlocutory judgment was entered on February 26, 1900, confirming it, and directing the referee to sell the premises "subject to the liens of the mortgages, * * * or free and clear of said liens, or any of them, as may seem best for the interests of all parties, and with the consent of the parties interested as lienors on the respective parcels." Although the owner of the first mortgage of $15,000 insisted upon the premises being sold subject to such mortgage, the plaintiff consented that they be sold free from the lien of his mortgage; and in the record of the proceedings before the referee it was accordingly stated that "Mr. Laird, the mortgagee, will take the payment referred to in the bond and mortgage referred to; although the same is not due, at any time, with interest up to the date of the payment." Thereafter, at a public sale, the premises were purchased by Laird for $16,500; and, as appears from the referee's report thereof, "said parcel 12 was sold free and clear of the lien of the mortgage held by the defendant John Laird." The order confirming the referee's report of sale permits the referee to pay to John Laird, "so far as such balance will be sufficient for him to do so, the principal sum of $2,000, secured by the mortgage, * * * and upon receiving such payment the said defendant John Laird execute and deliver * * * a receipt therefor, * * * and a release or discharge of said mortgage; * * * such release * * * without prejudice to any claim or right of action of the said John Laird for any amount which after such payment may remain unpaid upon the bond heretofore secured by his said mortgage." The referee's report of distribution recites that "John Laird was the purchaser of the parcel covered by his mortgage, and waived the recording of any satisfaction piece thereof." The waiver, which is annexed, states that the purchaser, "being now the holder and owner, desires to keep said mortgage in force." There is also a receipt by John Laird of $545.16, of which $395.16 is "part payment" of his mortgage. Thereafter Laird commenced this action on the bond of the defendants, who, upon the trial, besides presenting in evidence the record of the partition proceedings, offered evidence, which was rejected, of the actual value of the property. They also, upon the trial, tendered the amount called for by the bond upon being subrogated to the plaintiff's title to the bond and mortgage, which tender was declined. The plaintiff was awarded a judgment by direction of the court for $1,801.98, from which judgment the defendants appeal.

　　Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Louis J. Vorhaus, for appellant Wittkowski.
David Garber, for appellant Vorhaus.
W. Arrowsmith, for respondent.

O'BRIEN, J.   It would seem strange if the application of legal principles would justify sustaining this judgment; for the dealings of the parties and the sale of the property have given to the plaintiff, Laird, the consideration paid by the defendants when they bought the property from him for $21,500, the property itself, the balance of the proceeds of the sale in the partition action, the mortgage which it is claimed is still in force, and in addition a judgment against the defendants for $1,800.   In the suit in which the property constituting the collateral security given with the bond was sold, and in which, as claimed, the defendants' right to redeem, or, upon payment of the mortgage debt, to be subrogated to the security, was lost, the defendants were not parties, and, without their day in court, have lost all rights, except to pay the bond.   And in the present action, if the ruling made upon the trial is sustained, they cannot tender the amount due upon the bond and mortgage, and be subrogated to plaintiff's right under the mortgage as against the property itself, or the estate of Bryant; and their only recourse, if any, is to pay this judgment, and then seek to have the Bryant estate reimburse them in another action brought to enforce the agreement made by George Wallace Bryant, by which he assumed to pay the mortgage.   The legal effect of the sale to plaintiff, as contended by his counsel, is that with respect to the property itself he has acquired the same status as would a bona fide purchaser for value, and that the defendants have lost all right to be subrogated to the collateral security.   The learned trial judge, as stated, sustained this contention; thus, in effect, holding that the defendants' right to subrogation ended at the sale, and that the tender made upon the trial of the amount due under the mortgage, with the request to be subrogated, came too late.   It remains, however, to be determined whether the results mentioned, and the manner in which they have been accomplished, can, upon legal principles, be sustained.

When the defendants sold the property to Bryant under the agreement by which he assumed the payment of the mortgages, and notice thereof was given to Laird, the mortgagee, the premises became, as between the defendants and Bryant, the primary fund for the payment of the mortgage.   This, however, left entirely unaffected the plaintiff's right to resort to the bond for the collection of his debt, and the defendants could not compel him to proceed upon the bond, or resort in the first instance to the land; and it did not change the defendants' relation to the debt, for, upon paying such debt, either voluntarily or by compulsion, upon the doctrine of equitable subrogation they would be entitled to be substituted to the mortgage security as it originally existed, with the right to proceed immediately against the land for their indemnity.   The plaintiff could not deal with Bryant or his estate (he being the grantee of the equity of redemption), to the prejudice of the defendants' right of subrogation, without discharging them from liability for the debt, either wholly or pro tanto.   These

views are fully supported by the case of Calvo v. Davies, 73 N. Y. 215, 29 Am. Rep. 130, from which we have taken the language, transposing it merely so as to apply to the present litigants. That case is also authority for the proposition (as summarized in the headnote) that:

"Where a deed contains a covenant upon the part of the grantee to pay a mortgage upon the premises executed by the grantor, the relation of principal and surety is created between the parties; and an agreement by the holder of the mortgage with the grantee to extend the time of payment, made without the consent of the grantor, discharges the grantor."

And this rule is well stated in Marshall v. Davies, 78 N. Y. 421, wherein Calvo v. Davies, supra, is cited, as follows:

"We have held that where the mortgagor conveys to a third party, who assumes the mortgage, the relation of principal and surety arises between the mortgagor and his vendee, and that after notice of this relation the mortgagee is bound to observe it, and abstain from doing any act to the prejudice of the mortgagor, or which would impair his recourse against the mortgaged premises in case he should be obliged to pay his bond and be subrogated to the mortgage. The mortgagee, in such a case, after notice, cannot with impunity release the land, or extend the time of payment, or do any other act to the prejudice of the mortgagor; and the prohibited acts are determined by the law of principal and surety."

According to the arrangement made between the plaintiff and the Bryant estate in the partition suit, the property was to be sold free from the mortgage, the plaintiff electing to take the proceeds of the sale in lieu of his claim under the mortgage itself; and although such an arrangement may not legally have had the effect, as between the defendants and the Bryant estate, of releasing the latter from payment of the debt,—which question we reserve,—it effectually released the land from the mortgage. That arrangement did more, because the debt was not then due, and by it the plaintiff precipitated the maturity of the principal, and obtained title to the property at the sale free from the mortgage. In giving his consent, he, in terms, reserved his rights under the bond and mortgage; but, as all this was without the defendants' consent or knowledge, he did not thereby destroy the legal effect of his act in dealing with the principal debtor without the assent of the defendants who were sureties, and the legal consequences could not be affected by an agreement between the plaintiff and the principal debtor to which the defendants were not parties.

Our attention has been called to a line of cases, of which Vose v. Railroad Co., 50 N. Y. 369, is a good illustration, holding that a sale by a creditor of collateral securities placed in his hands by the principal debtor, in violation of his stipulation to give a particular notice of sale contained in the contract under which they were pledged, does not per se discharge in toto the surety, who is liable for the debt, but by such sale the creditor makes the securities his own, to the extent of discharging the surety to an amount equal to their value. If, however, that rule were applied in the case at bar, this judgment could not be sustained, because, if we should hold that all that was done by the plaintiff was merely to deal with the collateral security as his own, it here appears that evidence offered by the defendants (in addition to what appears from the referee's report,

and from the consideration paid by the respective purchasers) to show just what was the actual value of the property was excluded; due exception being taken to such ruling. Under the plaintiff's theory, therefore, this judgment cannot stand, because, having by the arrangement between himself and the principal debtor, in the absence of the sureties, released the property, and permitted it to be sold free from the mortgage, he treated it as though it were his own; and, under the rule to which we have referred, it was entirely competent for the defendants to show what the property was really worth, and to that extent have it applied pro tanto in payment of the mortgage debt. It follows that the judgment should be reversed, if for no other reason than because of the rulings excluding the evidence offered of the value of the mortgaged premises. We think, however, that the legal consequences of the manner in which the plaintiff dealt with the property and the debt were even more serious; for, after notice that the Bryant estate was the principal debtor, in arranging with it that the debt should be considered as immediately due, and should not be enforced against that estate, and in releasing the land from the mortgage, he thereby discharged the defendants, who, as stated, stood in the position of sureties.

We have assumed in this discussion that as the defendants were not parties to the partition action, and, so far as appears, in no other way received actual notice of the arrangement made by the plaintiff therein, or of the proceedings themselves leading down to and including the sale, they were deprived of all opportunity to protect their rights, either by paying the debt and being subrogated to the collateral security, or, upon the sale, seeing to it that the property brought its full value. Upon a new trial the facts may be brought out more fully, and we think, therefore, that the proper disposition to make is to reverse the judgment and order entered, and to order a new trial, with costs to the appellant to abide the event. All concur.